**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

INTEGRAL WIRELESS TECHNOLOGIES LLC,

*Plaintiff,*

v.

TELTONIKA IOT GROUP,

*Defendant.*

Civil Action No. 2:25-cv-00945

**JURY TRIAL DEMANDED**

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Teltonika IoT Group ("Teltonika" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|  | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,269,127 | Preamble Structures for Single-Input, Single-Output (SISO) and Multi-Input, Multi-Output (MIMO) Communication Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7269127 |
| 2. | 7,483,878 | Generation and Presentation of Search Results Using Addressing Information | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7483878 |
| 3. | 7,676,007 | System and Method for Interpolation Based Transmit Beamforming for MIMO-OFDM with Partial Feedback | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7,676,007 |

|   | Patent No. | Title | Available At |
|---|---|---|---|
| 4. | 7,707,214 | Hierarchical Update Scheme for Extremum Location with Indirect Addressing | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7707214 |
| 5. | 8,156,360 | Systems and Methods for Waking Wireless LAN Devices | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8156360 |
| 6. | 8,976,714 | Providing and Acquiring A System Information Message In A Wireless Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8976714 |
| 7. | 9,207,748 | Systems and methods for a wireless device wake-up process including power-save and non-power-save modes | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9207748 |
| 8. | 10,033,716 | Method and Device for Publishing Cross-Network User Behavioral Data | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10033716 |

2.    Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.    Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W. Martin Luther King Jr. Blvd., Unit 281, Austin, Texas 78701 (Travis County).

4.    Upon information and belief based on public information, Teltonika is a corporation organized and existing under the laws of Lithuania.

5.    Upon information and belief based on public information, Teltonika maintains an established place of business at Saltoniškių st. 14, LT-08105, Vilnius, Lithuania.

## JURISDICTION AND VENUE

6.    Integral Wireless repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

7.     This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*

8.     This Court has personal jurisdiction over Teltonika pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) Teltonika has done and continues to do business in the United States, including in the State of Texas; (ii) Teltonika has committed and continues to commit acts of patent infringement in the United States, including in the State of Texas, including making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas, including by Internet sales and sales *via* retail and wholesale stores, inducing others to commit acts of patent infringement in the United States and Texas, and/or committing at least a portion of any other infringements alleged herein.

9.     In addition, or in the alternative, this Court has personal jurisdiction over Teltonika pursuant to Fed. R. Civ. P. 4(k)(2).

10.     Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because Teltonika does not reside in any judicial district in the United States.

## THE ACCUSED PRODUCTS

11.     Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

12.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes the Teltonika server system, various 5G compatible devices, 802.11n compatible devices, 802.11ac compatible devices, HEVC compatible devices, and Bluetooth compatible devices, including, but not limited to, the "Accused Products" set forth below:

- Teltonika server system ("Teltonika System");

- Teltonika 5G compatible devices ("Teltonika 5G Devices") including, but not limited to:

  o RUTM52, RUTX50, TRB500, RUTM51, RUTM50, RUTC50, TRM500, RUT271, RUT976, RUTM59, RUTM54, OTD500, RUTM56, RUTM30, RUTM55, ATRM50 and RUTM31

- Teltonika 802.11n compatible devices ("Teltonika 802.11n Devices") including, but not limited to:

  o RUTC50, RUT956, RUT200, RUT901, RUT951, TAP100, RUT906, RUT260, RUT140, RUT142, RUT361, RUT241, RUT271, RUT976, RUT206, DAP140, DAP142, RUT951 PoE+, RUTM31, ATRM50, RUTM55, RUTM30, RUTM56, RUTM54, RUTC50, RUTM50, RUTM51, RUTM11, RUTM10, RUTXR1, RUTX50, RUTX14, RUTX12, RUTX10, RUTX11 and RUTM52

- Teltonika 802.11ac compatible devices ("Teltonika 802.11ac Devices") including, but not limited to:

  o TAP200

- HEVC compatible devices including ("Teltonika HEVC Devices"), but not limited to:

  o Teltonika DashCam, Teltonika DualCam

- Bluetooth v4.2 and higher compatible devices ("Teltonika Bluetooth Devices") including, but not limited to:

  o FMC650, TAT14, EYE BEACON ATEX, EYE Sensor ATEX, EYE Sensor

EN12830, EYE Beacon, and EYE Sensor, FMC650 4G, FMM650, TAT141

13.     Defendant also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes. *See, e.g.*, Camera Manual, TELTONIKA, available at https://wiki.teltonika-gps.com/view/Camera_Manual#Important_Set-up_links (last visited September 10, 2025) (providing user manual for Teltonika DualCam).

14.     Defendant also import into the United States, distribute, and sell the Accused Products to end-users *via* the Internet and *via* distribution partners, retailers, reseller partners, and solution partners. *See, e.g.*, *Teltonika Product Line*, MOUSER ELECTRONICS, available at h https://www.mouser.com/manufacturer/teltonika/product-line/ (last visited September 10, 2025) (listing most Teltonika products for sale); *FMM650 GPS tracker*, 4CONTROL.ONLINE, available at https://4control.online/product/fmm650-gps-tracker/ (last visited September 10, 2025) (listing the FMM650 GPS tracker for sale); *Teltonika DualCam*, GPSWOX, available at https://www.gpswox.com/en/gps-trackers-shop/all/teltonika-dualcam-121 (last visited September 10, 2025) (listing the Teltonika DualCam for sale); *TELTONIKA DASHCAM*, GPS TELEMATICS, available at https://www.gpstelematics.eu/teltonika-dashcam (last visited September 10, 2025) (listing the Teltonika DashCam for sale); *TAT141*, ARPAWAY, https://www.arpaway.com/product/tat141/?srsltid=AfmBOooxaygE4SqOQ9nLcCH5To4xVg7iA90RU4XRvQ1ga_20Ne6RxpLj&doing_wp_cron=1756407315.0802450180053710937500 (last visited September 10, 2025) (listing the Teltonika TAT141 for sale).  Those sales occur in the United States, and throughout Texas, including in this District.

15.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,269,127

16.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count, the term "Accused Products" shall mean Teltonika 802.11n Wi-Fi compatible devices, including, but not limited to, RUTC50, RUT956, RUT200, RUT901, RUT951, TAP100, RUT906, RUT260, RUT140, RUT142, RUT361, RUT241, RUT271, RUT976, RUT206, DAP140, DAP142, RUT951 PoE+, RUTM31, ATRM50, RUTM55, RUTM30, RUTM56, RUTM54, RUTC50, RUTM50, RUTM51, RUTM11, RUTM10, RUTXR1, RUTX50, RUTX14, RUTX12, RUTX10, RUTX11 and RUTM52,  etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

17.    The USPTO duly issued U.S. Patent No. 7,269,127 (hereinafter, the "'127 patent") on September 11, 2007, after full and fair examination of Application No. 10/264,546 which was filed on October 4, 2002.  *See* '127 patent at p. 1.

18.    Integral Wireless owns all substantial rights, interest, and title in and to the '127 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

19.    The written description of the '127 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

20.     The claims of the '127 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve communication systems and, more particularly, to single-input, single-output (SISO) and multi-input, multi-output (MIMO) communication system.

21.     Defendant has directly infringed one or more claims of the '127 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

22.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 20 of the '127 patent.

23.     As just one example, Defendant, through the use and provision of the Accused Products performs a method of forming a frame structure that is transmitted in a communication system, the method comprising the steps of: providing data blocks; providing training blocks; combining the data blocks and training blocks in a parallel format to provide a parallel combination; taking an inverse discrete fourier transform (IDFT) of the parallel combination to form IDFT blocks; inserting the cyclic prefixes between the IDFT blocks to form parallel symbols; converting the parallel symbols to serial format to form a preamble structure and a data structure, the preamble structure comprising at least one training symbol and an enhanced training symbol; the data structure comprising a plurality of data symbols; forming data symbols such that each data symbol comprises a cyclic prefix and a data block, the cyclic prefix having a number of samples G, the data block having a number of samples N; and forming a preamble structure having an enhanced training symbol, the enhanced training symbol comprising a cyclic prefix and a training block, the cyclic prefix having a number of samples G, the training block having a number of

samples $N_I$ such that $N_I = N/I$, where I is an integer and $G = N_I/4$.

24.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '127 patent.

25.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,483,878

26.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count, the term "Accused Products" shall mean the Teltonika products search functionality on its website, including but not limited to the functionality available, for example, at https://teltonika-networks.com/search?q=Cellular+Router, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

27.     The USPTO U.S. Patent No. 7,483,878 (hereinafter, the "'878 patent") on January 27, 2009, after full and fair examination of Application No.: 10/464,418 which was filed on June 17, 2003.  *See* '878 patent at p. 1.

28.     Integral Wireless owns all substantial rights, interest, and title in and to the '878 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

29.     The written description of the '878 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

30.     The claims of the '878 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve methods and associated systems for generating and presenting search results in a computer network.

31.     Defendant has directly infringed one or more claims of the '878 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

32.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '878 patent.

33.     As just one example, Defendant, through the use and provision of the Accused Products perform a method of providing search results to an end-user over a computer network, the method comprising: receiving addressing information identifying a location in a computer network; processing the addressing information to generate a keyword; performing a search on the keyword to generate a search result; and presenting an end-user the search result responsive to the keyword that is based on the addressing information in response to the end-user navigating to the location using a client compute.

34.     Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus

has been willfully blind of Integral Wireless' patent rights.

35.    Defendant had actual knowledge of '878 patent since at least the time of receiving the original complaint in this action.

36.    Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '878 patent by inducing others to directly infringe said claims.

37.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '878 patent by providing or requiring use of the Accused Products.

38.    Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '878 patent, including, for example, claim 1.

39.    Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

40.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '878 patent and with the knowledge that the induced acts constitute infringement.

41.    Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '878 patent.

42.    Defendant's inducement is ongoing.

43.    Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '878 patent.

44.    Defendant has contributed to the direct infringement of one or more claims of the '878 patent by their personnel, contractors, and customers.

45.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '878 patent, including, for example, claim 1.

46.    The special features constitute a material part of the invention of one or more of the claims of the '878 patent and are not staple articles of commerce suitable for substantial non-infringing use.

47.    Defendant's contributory infringement is ongoing.

48.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

49.    Defendant's direct infringement of one or more claims of the '878 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

50.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '878 patent.

51.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '878 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license

technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

52.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,676,007**

53.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count, the term "Accused Products" shall mean Teltonika 802.11ac Wi-Fi compatible devices, including but not limited to, TAP200, RUTM31, ATRM50, RUTM55, RUTM30, RUTM56, RUTM54, RUTC50, RUTM50, RUTM51, RUTM11, RUTM10, RUTXR1, RUTX50, RUTX14, RUTX12, RUTX10, RUTX11, RUTM52, RUTC50, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

54.     The USPTO duly issued U.S. Patent No. 7,676,007 (hereinafter, the "'007 patent") on March 9, 2010, after full and fair examination of Application No. 11/188,233 which was filed on July 21, 2005.  *See* '007 patent at p. 1.

55.     Integral Wireless owns all substantial rights, interest, and title in and to the '007 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

56.     The written description of the '007 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57.     The claims of the '007 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that relate to a multiple input multiple output system using orthogonal frequency division multiplexing, and more particularly, to systems using partial feedback for interpolation based transmit beamforming.

58.     Defendant has directly infringed and continue to directly infringe one or more claims of the '007 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

59.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '007 patent.

60.     For example, Defendant, through the provision and use of the Accused Products provides communication apparatuses comprising: a plurality of antennas; and a transmitter coupled to the antennas and configured to provide to the antennas a plurality of output signals on a plurality of subcarriers for transmission to a receiver of another communication apparatus, wherein: the transmitter is configured to provide the output signals in response to a plurality of input signals and limited feedback information; the transmitter is configured to receive the limited feedback information from the receiver; the limited feedback information includes interpolation information and beamforming vectors for a subset of the subcarrriers; the transmitter is configured to derive

beamforming vectors for at least one subcarrier of the plurality of subcarriers not included in the subset based at least on an interpolation of the beamforming vectors for a subset of the subcarriers; the interpolation is based at least in part on the interpolation information; and the interpolation information includes phase values.

61.     Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Integral Wireless' patent rights.

62.     Defendant had actual knowledge of '007 patent since at least the time of receiving the original complaint in this action.

63.     Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '007 patent by inducing others to directly infringe said claims.

64.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '007 patent by providing or requiring use of the Accused Products.

65.     Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '007 patent, including, for example, claim 1.

66.     Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused

Products in an infringing manner.

67.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '007 patent and with the knowledge that the induced acts constitute infringement.

68.     Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '007 patent.

69.     Defendant's inducement is ongoing.

70.     Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '007 patent.

71.     Defendant has contributed to the direct infringement of one or more claims of the '007 patent by their personnel, contractors, and customers.

72.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '007 patent, including, for example, claim 1.

73.     The special features constitute a material part of the invention of one or more of the claims of the '007 patent and are not staple articles of commerce suitable for substantial non-infringing use.

74.     Defendant's contributory infringement is ongoing.

75.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

76.     Defendant's direct infringement of one or more claims of the '007 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

77.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '007 patent.

78.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '007 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

79.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,707,214

80.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count, the term "Accused Products" shall mean Teltonika HEVC (High Efficiency Video Coding, H.265) compatible devices, including, but not limited to, Teltonika DashCam, Teltonika DualCam, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

81.    The USPTO duly issued U.S. Patent No. 7,707,214 (hereinafter, the "'214 patent") on April 27, 2010, after full and fair examination of Application No. 11/677,515 which was filed on

February 21, 2007. *See* '214 patent at p. 1.

82.    Integral Wireless owns all substantial rights, interest, and title in and to the '214 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

83.    The written description of the '214 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84.    The claims of the '214 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve the function and operation of data processing systems by using a hierarchical data structure that enables efficient identification and updating of extrema based on indirect addressing of data values.

85.    Defendant has directly infringed one or more claims of the '214 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

86.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 15 of the '214 patent.

87.    As just one example, Defendant, through the use and provision of the Accused Products performs a method, comprising: partitioning, by a computing device, a set of data values into one or more partitions in memory; generating, by the computing device, a coarse representation of extrema of each of the one or more partitions of the set of data values and storing

indices indicative of locations of extrema in the partitions in memory; and updating, by the computing device, the coarse representation in response to altering one or more data values of the set of data values, wherein the updating comprises storing in memory indices indicative of locations of any new extrema in partitions from the one or more partitions of the set of data values that include altered data values.

88.     Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

89.     Defendant had actual knowledge of the '214 patent since at least the time of receiving the original complaint in this action.

90.     Defendant has also indirectly infringed one or more claims of the '214 patent by inducing others to directly infringe said claims.

91.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '214 patent by providing or requiring use of the Accused Products.

92.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '214 patent, including, for example, claim 15.

93.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing

ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

94.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '214 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '214 patent.

95.    Defendant's inducement is ongoing.

96.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '214 patent.

97.    Defendant has contributed to the direct infringement of one or more claims of the '214 patent by their personnel, contractors, and customers.

98.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '214 patent, including, for example, claim 15.

99.    The special features constitute a material part of the invention of one or more of the claims of the '214 patent and are not staple articles of commerce suitable for substantial non-infringing use.

100.    Defendant's contributory infringement is ongoing.

101.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

102.    Defendant's direct infringement of one or more claims of the '214 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

103.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '214 patent.

104.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

105.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '214 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,156,360**

106.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count, the term "Accused Products" shall mean Teltonika Bluetooth Low Energy (BLE) 5.0+ compatible devices, including but not limited to, the FMC650, TAT141, etc., and Teltonika Bluetooth Basic Rate/Enhanced Data Rate (BT BR-EDR)

version 4.1 and higher compatible devices, including but not limited to, EYE BEACON ATEX, EYE Sensor ATEX, EYE Sensor EN12830, EYE Beacon, and EYE Sensor, FMC650 4G, FMM650, TAT141, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

107.    The USPTO duly issued U.S. Patent No. 8,156,360 (hereinafter, the "'360 patent") on April 10, 2012, after full and fair examination of Application No. 12/168,706 which was filed on July 7, 2008. *See* '360 patent at p. 1.

108.    Integral Wireless owns all substantial rights, interest, and title in and to the '360 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

109.    The written description of the '360 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

110.    The claims of the '360 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of computer devices by wirelessly waking computer devices out of reduced power or sleep mode over a wireless local area network and by providing a network card for use with wireless devices that is capable of entering a wireless signal monitoring state and of monitoring received wireless signals while in the state

for a wake up data sequence.

111.    Defendant has directly infringed one or more claims of the '360 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

112.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 8 of the '360 patent.

113.    As just one example, Defendant, through the use and provision of the Accused Products provides an apparatus comprising: a controller configured to monitor a plurality of wireless channels for a wake-up packet addressed to a wireless device during a monitor timeframe, wherein the wake-up packet is configured to cause the wireless device to initiate a transition from operating in a first power mode to operating in a second power mode, wherein the controller is configured to initiate the transition from operating the wireless device in the first power mode to operating the wireless device in the second power mode when a wake-up packet addressed to the wireless device has been received before the monitor timeframe has elapsed, and wherein the controller is configured to cease to monitor the plurality of wireless channels when a wake-up packet addressed to the wireless device has not been received after the monitor timeframe has elapsed.

114.    Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

115.    Defendant had actual knowledge of the '360 patent since at least the time of receiving the original complaint in this action.

116.    Defendant has also indirectly infringed the '360 patent by inducing others to directly

infringe one or more claims of said patent.

117.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '360 patent by providing or requiring use of the Accused Products.

118.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '360 patent, including, for example, claim 8.

119.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

120.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '360 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '360 patent.

121.    Defendant's inducement is ongoing.

122.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '360 patent.

123.    Defendant has contributed to the direct infringement of one or more claims of the '360 patent by their personnel, contractors, and customers.

124.    The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '360 patent, including, for example, claim 8.

125.    The special features constitute a material part of the invention of one or more of the claims of the '360 patent and are not staple articles of commerce suitable for substantial non-infringing use.

126.    Defendant's contributory infringement is ongoing.

127.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

128.    Defendant's direct infringement of one or more claims of the '360 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

129.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '360 patent.

130.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

131.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '360 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own

ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,976,714

132.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count, the term "Accused Products" shall mean Teltonika 5G compatible devices, including but not limited to, the RUTM52 Dual 5G Router, the RUTX50, TRB500, RUTM51, RUTM50, RUTC50, TRM500, RUT271, RUT976, RUTM59, RUTM54, OTD500, RUTM56, RUTM30, RUTM55, ATRM50 and RUTM31, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

133.    The USPTO duly issued U.S. Patent No. 8,976,714 (hereinafter, the "'714 patent") on March 10, 2015, after full and fair examination of Application No. 13/133,076 and PCT No. PCT/EP2009/008798 which has a § 371 (c)(1), (2), (4) date of November 15, 2011.  *See* '714 patent at p. 1.

134.    Integral Wireless owns all substantial rights, interest, and title in and to the '714 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

135.    The written description of the '714 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

136.    The claims of the '714 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve receiving system information messages by disclosing user equipment that is configured to receive si-Windowlength information in a SI type 1 message.

137.    Defendant has directly infringed one or more claims of the '714 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

138.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '714 patent.

139.    As just one example, Defendant, through the use and provision of the Accused Products provides a user equipment (UE) comprising: a receiver configured to receive si-Windowlength information, wherein the si-Windowlength information is received in a system information (SI) type 1 message; a processor configured to calculate a downlink (DL) subframe wherein a SI message starts, wherein the calculated DL subframe is based on a total number of DL subframes contained in a radio frame; the processor further configured to calculate in the radio frame where the SI message starts, wherein the calculated radio frame is based on the total number of DL subframes contained in the radio frame; and the receiver further configured to receive the

SI message, in the calculated DL subframe of the calculated radio frame, during a period provided by the si-Windowlength information.

140.    Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

141.    Defendant had actual knowledge of the '714 patent since at least the time of receiving the original complaint in this action.

142.    Defendant has also indirectly infringed one or more claims of the '714 patent by inducing others to directly infringe said claims.

143.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '714 patent by providing or requiring use of the Accused Products.

144.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '714 patent, including, for example, claim 1.

145.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

146.    Defendant is performing these steps, which constitute induced infringement with the

knowledge of the '714 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '714 patent.

147.    Defendant's inducement is ongoing.

148.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '714 patent.

149.    Defendant has contributed to the direct infringement of one or more claims of the '714 patent by their personnel, contractors, and customers.

150.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '714 patent, including, for example, claim 1.

151.    The special features constitute a material part of the invention of one or more of the claims of the '714 patent and are not staple articles of commerce suitable for substantial non-infringing use.

152.    Defendant's contributory infringement is ongoing.

153.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

154.    Defendant's direct infringement of one or more claims of the '714 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

155.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '714 patent.

156.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '714 patent.  Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

157.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 9,207,748

158.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count, the term "Accused Products" shall mean Teltonika Bluetooth Low Energy (BLE) 5.0 and higher compatible devices, including but not limited to, the FMC650 4G M1, TAT141, etc., and Teltonika Bluetooth Basic Rate/Enhanced Data Rate (BT BR-EDR) version 4.1 and higher compatible devices, including but not limited to, the EYE BEACON ATEX, the EYE Sensor ATEX, EYE Sensor EN12830, EYE Beacon, and EYE Sensor, FMC650 4G, FMM650, TAT141, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

159.     The USPTO duly issued U.S. Patent No. 9,207,748 (hereinafter, the "'748 patent") on

December 8, 2015, after full and fair examination of Application No. 14/446,481 which was filed on July 30, 2014. *See* '748 patent at p. 1.

160.    Integral Wireless owns all substantial rights, interest, and title in and to the '748 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

161.    The written description of the '748 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

162.    The claims of the '748 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve systems and methods for accessing computing devices over wireless local area networks and more particularly to systems and methods for waking computing devices from a powered down or sleep state with signals sent over wireless local area networks.

163.    Defendant has directly infringed one or more claims of the '748 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

164.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 8 of the '748 patent.

165.    As just one example, Defendant, through the use and provision of the Accused Products provides a computer comprising: a controller configured to trigger a wake-up detection

mode at a wireless device for a pre-determined time period; and a communication interface coupled to the controller and configured to receive a wake-up packet addressed to the wireless device, wherein the wake-up packet is configured to cause the wireless device to initiate a switch from operating in a power-save mode to operating in a non-power save power mode; wherein the controller is further configured to perform a wake-up process at the wireless device to operate in the non-power save mode in response to receiving the wake-up packet and to exit the wake-up detection mode if the wake-up process is performed or the predetermined time period is exceeded.

166.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '748 patent.

Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,033,716

167.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count, the term "Accused Products" shall mean the Teltonika cookie, personalization, and customization functionality on its website, including but not limited to the functionality, for example, explained at https://teltonika-networks.com/about-us/policies-certificates/cookies-policy  and   https://teltonika-networks.com/about-us/policies-certificates/privacy-policy, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality

associated with those products and solutions.

168.    The USPTO duly issued U.S. Patent No. 10,033,716 (hereinafter, the "'716 patent") on July 24, 2018, after full and fair examination of Application No.: 15/278,533 which was filed on September 28, 2016.  *See* '716 patent at p. 1.

169.    Integral Wireless owns all substantial rights, interest, and title in and to the '716 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

170.    The written description of the '716 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

171.    The claims of the '716 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve client computing environments by summarizing cross-network user behavioral data and publishing the data to one or more data structures that become accessible to a server hosting an authorized domain when a user accesses the authorized domain.

172.    Defendant has directly infringed one or more claims of the '716 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

173.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '716 patent.

174.    As just one example, Defendant, through the use and provision of the Accused

Products performs computer-implemented method, implemented, at least in part, by a server that includes hardware in combination with software, the method comprising: receiving, by the server, one or more memory structures that include published summarized cross-network user behavior data from a client computer, wherein the published summarized cross-network user behavior data includes: collected cross-network user behavior data related to a user's interactions with a plurality of web sites on the client computer, the collected cross-network user behavior data being summarized on the client computer, and the summarized collected cross-network user behavior data published to the one or more memory structures on the client computer; decoding, by the server, the one or more memory structures; determining, by the server, at least one of a message or advertisement to send to a browser of the client computer based on the decoded one or more memory structures; customizing, by the server, the at least one of the message or advertisement to be responsive to the summarized cross-network user behavior data; and sending, by the server, the customized at least one of the message or advertisement responsive to the summarized cross-network user behavior data.

175.    Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

176.    Defendant had actual knowledge of '716 patent since at least the time of receiving the original complaint in this action.

177.    Defendant has also indirectly infringed one or more claims of the '716 patent by inducing others to directly infringe said claims.

178.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the

doctrine of equivalents, one or more claims of the '716 patent by providing or requiring use of the Accused Products.

179.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '716 patent, including, for example, claim 1.

180.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

181.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '716 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '716 patent.

182.    Defendant's inducement is ongoing.

183.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '716 patent.

184.    Defendant has contributed to the direct infringement of the '716 patent by their personnel, contractors, and customers.

185.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '716 patent, including, for example, claim 1.

186.    The special features constitute a material part of the invention of one or more of the claims of the '716 patent and are not staple articles of commerce suitable for substantial non-infringing use.

187.    Defendant's contributory infringement is ongoing.

188.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

189.    Defendant's direct infringement of one or more claims of the '716 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

190.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '716 patent.

191.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

192.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '716 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### JURY DEMAND

193.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

### PRAYER FOR RELIEF

194.    Integral Wireless requests that the Court find in its favor and against Defendant, and that the Court grant Integral Wireless the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '878 patent, the '007 patent, the '214 patent, the '360 patent, the '714 patent, and the '716 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that Defendant account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful as to the '878 patent, the '007 patent, the '214 patent, the '360 patent, the '714 patent, and the '716 patent, and that the Court award treble damages for the period of such willful infringement

pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>September 10, 2025</u>        Respectfully submitted,

By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**Attorneys for *Plaintiff INTEGRAL WIRELESS TECHNOLOGIES LLC***

* Admitted to the Eastern District of Texas

**List of Attachments**
- Civil Cover Sheet
- Proposed Summons

**List of Supporting Links**

1. U.S. Patent No. 7,953,411, USPTO, https://patentcenter.uspto.gov/applications/7953411.

2. U.S. Patent No. 8,156,360, USPTO, https://patentcenter.uspto.gov/applications/8156360.

3. U.S. Patent No. 10,033,716, USPTO, https://patentcenter.uspto.gov/applications/10033716.

4. U.S. Patent No. 8,073,866, USPTO, https://patentcenter.uspto.gov/applications/8073866.

5. U.S. Patent No. 7,627,805, USPTO, https://patentcenter.uspto.gov/applications/7627805.

6. U.S. Patent No. 8,031,654, USPTO, https://patentcenter.uspto.gov/applications/8031654.

7. U.S. Patent No. 7,707,213, USPTO, https://patentcenter.uspto.gov/applications/7707213.

8. U.S. Patent No. 7,707,214, USPTO, https://patentcenter.uspto.gov/applications/7707214.